**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**(Civil Division)**

| | |
|---|---|
| SUSAN MANUS, )<br>2018 N. Buchanan Court, )<br>Arlington, Virginia 22207 )<br> )<br>v. )<br> )<br>JAMES H. BILLINGTON, Librarian, Library of )<br>Congress, )<br>101 Independence Avenue, S.E., )<br>Washington, D.C. 20540 )<br> )<br><u>Serve</u>:  JEFFERSON SESSIONS, )<br>Attorney General for the United States, )<br> c/o Designated Representative )<br>United States Department of Justice )<br>950 Pennsylvania Avenue, N.W. )<br>Washington, DC 20530-0001 )<br> )<br><u>Serve</u>:  JESSIE K LIU, United States )<br>Attorney for the District of Columbia, )<br> c/o Designated Representative )<br>United States Attorney's Office )<br>555 Fourth Street, N.W. )<br>Washington, DC 20530 )<br> )<br>              Defendant. )<br>_____) | Civil Action No.:_____<br><br><br><br><br><br>**Jury Demanded** |

# COMPLAINT

**COMES NOW** SUSAN MANUS, by and through her undersigned counsel, and sues Defendant James H. Billington, Librarian, Library of Congress, for the cause of action stated as follows:

1

## INTRODUCTORY STATEMENT

1. Ms. Susan Manus ("Plaintiff" or "Ms. Manus") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq*.; and 42 U.S.C. § 1981a, for relief from discrimination based on her race (African American), and retaliation for engagement prior protected EEO activity.

2. Defendant James H. Billington ("Defendant" or "The Librarian") subjected Ms. Manus to Discrimination based on her age (over 40) and retaliation for engaging in prior protected EEO activity retaliation for during the course of her employment with the Library of Congress ("LOC").

## PARTIES

3. Ms. Manus Susan Manus is currently domiciled at 2018 N. Buchanan Court, Arlington, VA. 22207, and is a United States citizen. At all relevant times, Ms. Manus was an employee of the Library of Congress.

4. Defendant James H. Billington ("Defendant" or "The Librarian") is being sued in his official capacity as the Librarian for the Library of Congress ("the Agency").

5. Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of its employment, under the theory of *Respondeat Superior*.

## JURISDICTION

6. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. and

pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.

## VENUE

7. Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of the Defendant, an Agency of the federal government that operates within the District of Columbia, and occurred in the District of Columbia. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id*.

8. Venue is further appropriate because a substantial part of the events or omissions giving rise to this Complaint occurred within the offices of the Library of Congress located at the 101 Independence Avenue, S.E., Washington, District of Columbia 20540.

## EXHAUSTION OF REMEDIES

9. Ms. Manus has exhausted all of her administrative remedies.

10. On or around October 23, 2017, Ms. Manus timely filed an EEO complaint with the Agency's EEO office, which was investigated by the Agency.

11. The Agency provided Ms. Manus with its Final Agency Decision, which provided her with 90-days from receipt of the final decision to file her lawsuit.

12. Ms. Manus hereby timely files this action within 90-days after receipt of the Final Agency Decision.

## FACTS

13. Ms. Manus hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

14. Ms. Manus, DOB xx-xx-/1957, has retired from the Library of Congress.

15. Ms. Manus' first level supervisor at all times relevant to this case was Ellis Brachman, Chief Communications Officer, NOI.  He became her supervisor October 2016.

16. Ms. Manus' official job title was Special Assistant to the Director, Partnerships and Outreach Programs, GS-301-14-257683.

17. On or around October 2016, the Music Division management indicated that they wanted Ms. Manus for a detail assignment to work on the Bromberg project.

18. Ms. Manus Communicated her desire to work on this program to Colleen Shogan, her supervisor's boss and her previous boss.

19. On or about March 24. 2017, Ms. Manus went to the EEO office and met with Vicki Magnus, Chief of EEO, and she addressed her concerns regarding a lack of support on the job and her desire to obtain a detail as a solution.

20. Ms. Manus sought out the EEO office because she believed that Mr. Ellis was treating her as he was because of her age.  She believed that he was not willing to give her the opportunity the detail could offer because she was too old and it should be an opportunity for a younger employee.

21. On or about March 31, 2017, Ms. Manus met again at the EEO office with Ms. Magnus who was trying to mediate this possible detail assignment to the Music Division/Bloomberg Project.  She told me she was going to contact my supervisor.

22. On April 3, 3017, Ms. Manus went back to the EEO Office and complained about the performance evaluation that she received that day from her supervisor.

23. On or about April 17, 2018 Ms. Manus received a phone call from Ms. Magnus advising that she spoke to Mr. Ellis and he said he was working it out.

24. Ms. Manus said she went to Mr. Ellis on or around April 17, 2018, and asked about whether he had any negative performance issues and he replied "no".

25. On or about May 15, 2017, Ms. Manus met again at the EEO office with Ms. Magnus and she complained about a recent problem with Mr. Ellis berating her via email and she stated that she was afraid that she is now in a hostile work environment.

26. On or about May 30, 2018, Ms. Manus met with Mr. Ellis to discuss a recent extra assignment and Mr. Ellis noted that she was "on track" with this assignment.

27. On or about May 31, 2018, Ms. Manus met again with Vicki Magnus out the detail and she had no developments.

28. June 20, 2018, Ms. Manus was advised that by EEO officer Magnus that the Music detail was a "no go".

29. On or about August 14th 2017, Ms. Manus met again at the EEO office with Ms. Magnus addressed the idea of a possible project with Education Outreach team within NIO).  Ms. Magnus reached out to Ms. Manus' supervisor to discuss this request and left him a message.

30. On or about September 12, 2017 Ms. Manus received a request from Mr. Ellis to meet for her "mid-year review".  She was only given a couple hours' notice.

31. During this meeting, Mr. Ellis announced that he knew that Ms. Manus had been going to EEO and he had already talked to Vicki and "there will be no detail".  At this same meeting, Mr. Ellis issued Ms. Manus her mid-year review and a performance counseling memo. Both were riddled with insults.

32. On or about September 14, 2018, Ms. Manus met with the EEO Chief, Ms. Magnus, regarding the new performance counseling memo.  Ms. Manus described the meeting that

she had with her supervisor, Mr. Ellis, and Ms. Magnus said "this is constructive discharge" and she discussed with Ms. Manus the options that she has.

33. Ms. Manus firmly believed that she would be set up and terminated within the 35-day period scheduled for the first test/review under this newly issued performance plan.

34. On or about September 22, 2017, due to the retaliation and the age discrimination that she had suffered, Ms. Manus reluctantly gave her notice of retirement to management.

35. On or about September 29, 2018, she worked her last day on a job that she loved.

36. To Ms. Manus' knowledge, information and belief, she was soon replaced by another younger employee (under 40) with no EEO activity, and that employee received the detail opportunity that Ms. Manus was denied by Mr. Ellis.

37. Ms. Manus, after she visited and complained to the Defendant's EEO office, was subjected to acts of and reprisal.

38. Since Ms. Manus believes that the treatment she received was a violation of her Title VII rights, Ms. Manus sought relief by complaining internally to the Agency's Chief EEO Officer.

39. Ms. Manus now timely files this Complaint for relief from the discriminatory and illegal treatment that she experienced as a result of the Agency's actions and inactions.

## CAUSES OF ACTION

### COUNT ONE
**(Discrimination on the Basis of Reprisal in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)**

40. Ms. Manus incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

41. Ms. Manus complained to her supervisors of the unlawful, hostile and discriminatory and retaliatory treatment that she to which she was being subjected.

42. Since March 2017 up to her early retirement in September 2017, Ms. Manus regularly made several complaints and visits to Defendant's EEO Officer and met with the Chief of the EEO office to discuss her concerns and complaints.

43. She also asked the Chief of the EEO office to assist her in getting a detail away from her boss, Mr. Ellis.

44. During her reach out for assistance, her boss, Mr. Ellis announced to Ms. Manus that he knew she was going to the EEO office and very shortly thereafter, Ms. Manus received a negative written mid-term review and a Performance counseling memo and was placed on a performance improvement plan.

45. This occurred despite Ms. Manus being told by her supervisor, Mr. Ellis, in April 2017 that he had no negative performance issues with her to speak of.

46. Defendant engaged in reprisal against Ms. Manus because she opposed Defendant's discriminatory practices and participated in EEO activity.

47. The adverse retaliatory actions to which Ms. Manus has been subjected to are directly a result of Ms. Manus having previously engaged in protected EEO activity.

48. Ms. Manus complained to the Defendant's Chief EEO Officer. Mr. Ellis knew that Ms. Manus was going to the EEO office to complain, and the EEO Chief Officer contacted Mr. Ellis directly as a result of Ms. Manus' complaints made.

49. It is clear that Mr. Ellis knew of Ms. Manus' participation in protected EEO activity before subjecting her to the aforementioned adverse actions.

50. The adverse treatment that Ms. Manus was being subjected to by Defendant was in front of and obvious to other workers in her office.

51. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Ms. Manus suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

52. Ms. Manus was made to endure a great amount of pain and suffering, and her injuries are permanent in nature. Further, Defendant's treatment and actions were ongoing.

53. Ms. Manus has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Ms. Manus contributing in any way thereto.

**WHEREFORE**, Ms. Manus respectfully prays that this Honorable Court:

a. Award compensatory damages in excess of $150,000.00;

b. Damages and equitable relief for all harm she has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

c. Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

d. Award reasonable attorney fees, costs, and expenses incurred for this action;

e. Order Defendant to institute a policy and procedure to be implemented against discrimination;

f. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

g. Supervisory training for the supervisors at issue herein;

    h.   Award equitable, declaratory, and injunctive relief; and

    i.   Award such other and further relief as this Honorable Court deems just and proper.

**COUNT TWO**
**Age Discrimination in Employment Act of 1967,**
**29 U.S.C. § 621** *et seq.*
**(Employment Discrimination on the Basis of Age)**

54.    Ms. Manus hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

55.    The Age Discrimination in Employment Act makes it unlawful for an employer to take adverse action against an employee "because of such individual's age." 29 U.S.C. § 623(a).

56.    At all relevant times, Ms. Manus was over the age of 40 (DOB: xx-xx-1957).

57.    The Defendant did not treat the employee who replaced Ms. Manus as she was treated.

58.    The employee who replaced her after she retired, upon information and belief, was under the age of 40.

59.    The employee who replaced Ms. Manus was allowed to receive one of the details that Ms. Manus so desperately tried to obtain, but was denied by Mr. Ellis.

60.    Mr. Ellis was the person who approved the detail that the employee who replaced Ms. Manus received.

61.    Because of her age, Ms. Manus suffered adverse employment actions, including denial of a detail, a negative performance mid-year review and a performance counseling memo.

62.    Because Ms. Manus realized that she was being set up to fail, she was forced to retire earlier than she planned.

63. Before she retired, Ms. Manus was performing up to and above the Defendant's standards.

64. Defendant's discriminatory treatment was intentional.

65. As a direct and proximate cause of the Department's conduct alleged in this Complaint, Ms. Manus suffered and continues for suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, expenses and costs – and is entitled to all available legal and equitable remedies.

66. Ms. Manus has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Ms. Manus contributing in any way thereto.

WHEREFORE, Ms. Manus respectfully prays that this Honorable Court:

a. Damages and equitable relief for all harm Ms. Manus has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits he would have received but for Defendant's unlawful conduct;

b. Order the Defendant to institute a policy and procedure to be implemented against discrimination;

c. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

d. Supervisory training for the supervisors at issue herein; and

e. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Ms. Manus demands a trial by jury on all issues set forth herein.

                                                Respectfully submitted,

                              By:    *Donna Williams Rucker*
                                         DONNA WILLIAMS RUCKER
                                           (D.C. Bar No. 446713)
                                         TULLY RINCKEY PLLC
                                         815 Connecticut Avenue, N.W.
                                         Washington, DC 20006
                                         Office: (202) 349-9830
                                         Facsimile: (202) 355-1399
                                         Email: drucker@fedattorney.com
May 15, 2018                             Counsel for Ms. Manus